IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DAVID I. COHEN AND ELAINE COHEN,
*husband and wife*,

                Appellants,

                v.

JEFFREY J. SIKIRICA, *Chapter 7 Trustee*,

                Appellee.

12cv1797

**ELECTRONICALLY FILED**

On Appeal from the Bankruptcy Court for
the Western District of Pennsylvania
Case Nos. 07ap02517 and 05bk38135
Bankruptcy Judge: Hon. Jeffery A. Deller

## MEMORANDUM OPINION

### I. Introduction

David I. Cohen and Elaine Cohen[1] ("Appellants") appeal from a Final Order of the

United States Bankruptcy Court for the Western District of Pennsylvania finding them liable to

Appellee Jeffrey J. Sikirica ("the Trustee") in the amount of $488,615.79.[2]  The Bankruptcy

Court held that Mr. Cohen fraudulently transferred the funds by depositing the funds into

Appellants' marital account at PNC Bank (the "Entireties Account").[3]  After careful

consideration of Appellants' Brief (Doc. No. 4), the Trustee's Brief (Doc. No. 5),[4] and all of the

relevant documents in the Bankruptcy Court, and for the reasons set forth below, the decision of

---

[1] Unfortunately, Ms. Cohen passed away on August 16, 2012, after the trial in the Bankruptcy Court.  However, neither party has filed a Notice of Suggestion of Death or a Motion to Substitute Party, either in the Bankruptcy Court or in this Court.

[2] Judgment was entered on an Amended Complaint filed in *Sikirica v. Cohen*, 07-2517, (Bankr. W.D. Pa.).  The Order was also entered in the underlying Bankruptcy proceeding, *In re Cohen*, 05-38135 (Bankr. W.D. Pa.).

[3] The Bankruptcy Court issued a Memorandum Opinion laying forth its Findings of Fact and Conclusions of Law pursuant to Fed. R. Bankr. P. 7052.  *Sikirica v. Cohen (In re Cohen)* ("*Adversary Proceeding*"), 2012 WL 5360956 (Bankr. W.D. Pa. Oct. 31, 2012).

[4] Appellants' Reply Brief was due by February 11, 2013.  Text Order of 1/29/2013; Fed. R. Bankr. P. 8009.  However, none has been filed as of this date.

the Bankruptcy Court will be AFFIRMED IN PART, VACATED IN PART, and REMANDED for further proceedings consistent with this Opinion.

## II. Procedural and Factual Background

The following facts are taken from the Bankruptcy Court's Memorandum Opinion, *Adversary Proceeding*, 2012 WL 5360956 at *1-3, which the parties do not dispute. On March 30, 2005, a verdict was entered against Mr. Cohen (and other defendants) in the Court of Common Pleas of Allegheny County for breach of a commercial lease.[5] On October 14, 2005, Mr. Cohen filed for bankruptcy. On June 7, 2006, the Court of Common Pleas of Allegheny Court entered a final amended judgment in favor of TrizecHahn Gateway, LLC ("Trizec") and against Mr. Cohen (and other defendants), jointly and severally, for approximately $3,274,000.

On October 11, 2007, the Trustee initiated the adversary proceeding by filing his Complaint against Appellants. On February 14, 2010, the Trustee filed his Amended Complaint. In his Amended Complaint, the Trustee alleged that the portions of Mr. Cohen's deposits into the Entireties Account, not subsequently spent on necessary living expenses, constituted fraudulent transfers under Pennsylvania law, and therefore he sought recovery of $1,190,734.74. A trial was held on October 19, 2011. On October 31, 2012, the Bankruptcy Court entered judgment in favor of Appellants on the actual fraudulent transfer count and in favor of the Trustee on the constructive fraudulent transfer counts in the amount of $488,615.79. Appellants filed a timely Notice of Appeal. Doc. No. 1.

---

[5] The amount of the initial judgment is not in the record.

### III. Jurisdiction and Standard of Review

The Bankruptcy Court had jurisdiction pursuant to 28 U.S.C. § 157(a).[6]  This Court has jurisdiction pursuant to 28 U.S.C. § 158(a).   The standard of review is the same for the District Court and for the United States Court of Appeals, both of which review findings of fact for clear error and exercise plenary review over questions of law.  *Mintze v. Am. Gen. Fin. Servs., Inc. (In re Mintze)*, 434 F.3d 222, 227-28 (3d Cir. 2006); *In re Schick*, 418 F.3d 321, 323 (3d Cir. 2005). When considering a mixed question of fact and law, the issue must be broken down into its component parts, with underlying questions of fact being reviewed for clear error and underlying questions of law being reviewed *de novo*.  *Young v. 1200 Buena Vista Condominiums*, 477 B.R. 594, 596 (W.D. Pa. 2012) (Schwab, J.) (citing *First Jersey Nat. Bank v. Brown* (*In re Brown*), 951 F.2d 564 (3d Cir. 1991)).

### IV. Discussion

Appellants raise eight issues on appeal: (1) did the Bankruptcy Court apply the correct burden of proof; (2) did the Trustee fail to meet his burden with respect to the amount of deposits; (3) are Appellants liable for unexplained expenditures from the Entireties Account; (4) did the deposits made by Ms. Cohen constitute reasonably equivalent value for Mr. Cohen's deposits; (5) was the Trustee and/or Trizec required to object to the discharge of Mr. Cohen's

---

[6] On October 16, 1984, the Board of Judges of the United States District Court for the Western District of Pennsylvania issued an Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc, which referred virtually all cases arising under Title 11 to the Bankruptcy Court for the Western District of Pennsylvania.

Appellants challenged the jurisdiction of the Bankruptcy Court in the proceedings below.  The Bankruptcy Court found, as a matter of fact, that the parties consented to entry of final judgment by the Bankruptcy Court.  *Adversary Proceeding,* 2012 WL 5360956 at *1.  Appellants do not challenge this finding of fact and therefore the Bankruptcy Court had jurisdiction to enter final judgment, even if the proceedings are non-core.  *ARDI Ltd. P'ship v. The Buncher Co., (In re River Entertainment Co.)*, 467 B.R. 808, 822 (Bankr. W.D. Pa. 2012) (citing 28 U.S.C. § 157(c)(2); *Stern v. Marshall*, 131 S.Ct. 2594, 2607-08 (2011)).

debts; (6) was Mr. Cohen insolvent; (7) was the Bankruptcy Court bound by the Court of Common Pleas of Allegheny County's decision; and (8) does the deposit of wages into an entireties account constitute the transfer of an asset under the Uniform Fraudulent Transfer Act ("UFTA")?

**A. Burden of Proof**

The Bankruptcy Court adopted the following burden of proof:

> Trustee must prove by the preponderance of the evidence that (1) the Debtor failed to receive reasonably equivalent value in exchange for the direct deposits of his wages in to the Entireties Account, and (2) he was either insolvent at the time of, or was rendered insolvent by, such transfers. However, this Court will impose on the defendants the burden of producing at least some useful evidence to demonstrate how they spent the deposited funds. Absent the production of some evidence, the Trustee will be deemed to have met his burden of proof.

*Adversary Proceeding*, 2012 WL 5360956 at *7. Appellants argue that the Trustee has the burden of proof for all elements of the claim, including how funds in the Entireties Account were spent. As this is a question of law, this Court reviews the Bankruptcy Court's decision *de novo*.

Appellants rely heavily on the related case[7] of *Cardiello v. Arbogast (In re Arbogast)* ("*Arbogast II*"), 479 B.R. 661 (W.D. Pa. 2012) (McVerry, J.). However, Judge McVerry affirmed the decision of the Bankruptcy Court to "place[] the burden to produce evidence regarding the use of funds from the entireties account upon the [defendants]." *Id*. at 666.

The Court agrees with Judge McVerry, and the Bankruptcy Court, that Appellants had the burden to produce some useful evidence regarding the use of funds from the Entireties Account. As the Bankruptcy Court noted, "'[s]hifting the burden of producing evidence is not the same things [sic] as shifting the burden of persuasion,' [and the *Arbogast* I Court thus] imposed on the defendants 'the burden of producing at least some useful evidence regarding

---

[7] Arbogast was one of Mr. Cohen's co-defendants found to be jointly and severally liable to Trizec.

what the funds deposited into an entireties bank account are ultimately spent on.'" *Adversary*

*Proceeding*, 2012 WL 5360956 at *6 (alteration in original) (quoting *Cardiello v. Arbogast* (*In*

*re Arbogast*) ("*Arbogast I*"), 466 B.R. 287, 307-08 (Bankr. W.D. Pa. 2012)). As the Bankruptcy

Court in *Arbogast I* stated, this approach "is appropriate given that constructive fraudulent

transfer defendants will often possess complete control over information as to the ultimate use of

bank deposits." *Abrogast I*, 466 B.R. at 308. Accordingly, the Bankruptcy Court applied the

correct burden of proof.

### B. Amount of Wages Attributable to Mr. Cohen

Appellants argue that the Trustee failed to satisfy his burden of proof because he did not

prove the amount of Mr. Cohen's wages that were deposited into the Entireties Account. As this

is a question of fact, this Court reviews the Bankruptcy Court's determination for clear error.

Mr. Cohen's own testimony during the trial before the Bankruptcy Court was that his

practice was to deposit all of his salary and wages into the Entireties Account. Doc. No. 4, 7

(citing Trial Transcript p. 131). His testimony is supported by the documentary evidence that

was submitted to the Bankruptcy Court by the Trustee. In particular, the Trustee's Exhibit 26

includes a compilation of deposits into the Entireties Account that are attributable to Mr. Cohen

through November 2003. The remainder of Exhibit 26 consists of bank statements from the

Entireties Account that proves the amounts of the deposits. Documentation in Exhibit 29

includes additional bank statements for periods after November 2003 and Appellants' tax returns

for the relevant time periods and shows that Mr. Cohen received over $700,000 in wages. The

evidence as to this fact is overwhelming. Thus, the Bankruptcy Court did not commit clear error

in finding that the Trustee had met his burden of proof with respect to the amount of wages

attributable to Mr. Cohen.

### C. Unexplained Expenditures

Appellants next argue that the Bankruptcy Court erred in finding Appellants liable for unexplained expenditures from the Entireties Account.

#### 1. Admission of Exhibit 25

Appellants first challenge the Bankruptcy Court's decision to admit into evidence Exhibit 25, which consisted of a list of expenditures made from the Entireties Account. This Court reviews evidentiary rulings for an abuse of discretion. *Data Sys. Network Corp. v. Memorex Telex Corp. (In re Memorex Telex Corp.)*, 242 B.R. 826, 830 (D. Del. 1999) (citation omitted); *see United States v. DeMuro*, 677 F.3d 550, 557 (3d Cir. 2012) (citation omitted).

Appellants objected to the authenticity of Exhibit 25. Federal Rule of Evidence 1006 provides, in relevant part, that "[a party] may use a summary, chart, or calculation to prove the content of voluminous writings . . . that cannot be conveniently examined in court . . . ." In this case, it would not have been convenient to have bank statements for all of the unexplained expenditures from the Entireties Account examined by Mr. Cohen. Thus, the Trustee's use of a Rule 1006 exhibit was appropriate. The Trustee also complied with the remainder of Rule 1006, which mandates that all parties be permitted to access the records upon which a Rule 1006 is based. Thus, the Bankruptcy Court did not abuse its discretion by admitting Exhibit 25 into evidence.

#### 2. Burden of Proof

Appellants also argue that the Bankruptcy Court applied the incorrect burden of proof. This is a question of law which the Court reviews *de novo*. The Bankruptcy Court stated that: "[t]he Trustee must prove by the preponderance of the evidence that the Defendants failed to use the deposited funds to purchase necessities. However, as asserted in *Arbogast* [*I*], the burden is

on the defendants to produce at least some evidence regarding what they purchased with the deposited funds." *Adversary Proceeding*, 2012 WL 5360956 at \*13.

In accordance with Section IV(A) *supra*, this Court finds that the Bankruptcy Court made the correct determination with regard to the applicable burden of proof. Appellants' argument that it was impossible to meet their burden of production is without merit. Appellants could have produced the checks in question to show that they had been used for necessities. In the alternative, Mr. Cohen could have testified as to what necessities were purchased.

### 3. Sufficiency of Evidence

Appellants also challenge the sufficiency of the evidence with respect to the Bankruptcy Court's finding that "the Trustee may recover $463,575.08 in unknown purchases from the Entireties Account." *Adversary Proceeding*, 2012 WL 5360956 at \*13. This is a mixed question of law and fact that must be broken down into its component parts.

### a. Funds Attributable to Ms. Cohen

Appellants argue that the Trustee was required to establish that the unexplained expenditures were funded solely by Mr. Cohen's wages. The Trustee argues that because Appellants failed to meet their burden of production, the Trustee was not required to prove that the unexplained expenditures were funded with Mr. Cohen's wages. This is a question of law which this Court reviews *de novo*.

In *Titus*, the Bankruptcy Court held that the "Trustee, in order to so prevail, needs to preponderantly prove that no money that was deposited into the Entireties Checking Account during the lookback period other than such indirect wage transfers funded such expenditures." *Böhm v. Titus (In re Titus)*, 467 B.R. 592, 623 (Bankr. W.D. Pa. 2012). The Court then went on

to find that it was at least as likely as not that Mr. and Mrs. Titus' Social Security payments were used to fund the objectionable expenditures. *Id*.

The Court finds the reasoning in *Titus* compelling as to the burden of production. Due to the nature of checking accounts, funds are co-mingled as soon as they are deposited. The funds are not held separate and then used to pay for different items. The Trustee *de facto* admits in his brief that he failed to produce any evidence that the funds from Ms. Cohen's wages/pension were not used to fund the unexplained expenditures. His argument that because such funds were *de minimis* the Bankruptcy Court was correct to ignore Ms. Cohen's deposits is unpersuasive. First, the funds were not *de minimis*. Second, even if *de minimis*, a correct calculation needs to be made when possible.

### b. Unexplained Deposits

Appellants also argue that the unexplained deposits into the Entireties Account should be deducted from the amount recoverable. The Trustee argues that he proved by a preponderance of the evidence that the unexplained deposits into the account were from Mr. Cohen's wages. As a preliminary matter, this Court must determine if it may consider the Trustee's argument, or if it has been waived.

The Bankruptcy Court found that the Trustee had failed to meet his burden of proof with respect to these unexplained deposits. *Adversary Proceeding*, 2012 WL 5360956 at *14. The Bankruptcy Court stated that it was possible that the unexplained deposits came from inheritances due to Ms. Cohen only, or some other source. *Id*. at *14 n.11. The Trustee did not appeal from this ruling or file a cross-appeal. In *Ethypharm S.S. France v. Abbott Labs.*, --- F.3d ---, 2013 WL 238794 (3d Cir. Jan. 23, 2013), the United States Court of Appeals for the Third Circuit stated that "it is 'well established that an appellee may, without taking a cross-appeal,

support the judgment as entered through any matter appearing in the record, though his argument may attack the lower court's reasoning or bring forth a matter overlooked or ignored by the court.'" *Id*. at *10 n.15 (quoting *EF Operating Corp. v. Am. Bldgs.*, 993 F.2d 1046, 1048 (3d Cir. 1993)). Thus, the Court may consider the Trustee's argument.

Turning to the merits of Appellants' argument, the Court finds that the Trustee met its burden of proof with respect to a portion of the unexplained deposits being used for unexplained expenditures, but not all of the unexplained deposits being used for unexplained expenditures. The Trustee produced evidence at trial that the funds that were known to be Mr. Cohen's direct deposits from Cohen & Grigsby were less than the amount of income reported on Mr. Cohen's W-2 forms. Mr. Cohen had testified during trial that he had deposited all of his wages into the Entireties Account during the relevant time period. However, the difference between the amount on the W-2 forms (minus various withholdings) and the amount of known deposits in the Entireties Account, is not equal to or greater than the amount of unexplained deposits. For example, in year 2002 the difference was approximately $19,000. Thus, as discussed in Section IV(B), supra, the Trustee proved that at least $700,000 of the deposits into the account were attributable to Mr. Cohen.

### c. Purpose of Expenditures

Appellants also argue that the Trustee failed to meet his burden in proving that the unexplained expenditures were not necessary household expenditures. This is a question of fact which this Court reviews for clear error. During trial, Mr. Cohen was asked by counsel for the Trustee what the expenditures listed in Exhibit 25 were used for. Mr. Cohen responded that he did not know what the funds were specifically used for, but that the funds were used for necessities. The Court did not commit clear error in affording no weight to this testimony. It

was reasonable for the Bankruptcy Court to surmise that Mr. Cohen could not have known with certainty that the funds were used to pay for necessities if he did not know what the expenditures were used for. The Trustee presented sufficient evidence to demonstrate that the expenditures were not used for necessary expenditures. For example, the size of the transactions was circumstantial evidence that the funds were not used for necessary expenditures. *Adversary Proceeding*, 2012 WL 5360956 at *13 ("each one of these transactions is monetarily significant"). When considered in combination with the fact that Appellants' major necessary expenditures had already been located, the Trustee presented enough evidence to meet his burden of proof that the unexplained expenditures were not used for necessities.

### d. Apportionment of Funds

Having determined that the Trustee failed to satisfy his burden of proof with respect to at least a portion of the unexplained expenditures, the Court turns to how that impacts the amount of the final judgment. In *Titus*, the Court held that Social Security deposits made by Mr. and Mr. Titus had to be deducted from the objectionable expenditures. *Titus*, 467 B.R. at 624. The Court held that it would not be possible for Mr. and Mrs. Titus to produce evidence to show that the Social Security income was used to pay for the objectionable expenditures. *Id*. at 623 n.13. However, the Court declined to deduct the portion of the unexplained deposits not attributable to Mr. Titus' wages from the objectionable expenditures. *Id*. at 620, 623-24.

The Bankruptcy Court in *Titus* held that because the amount of deposits attributable to Mr. Titus' wages was greater than the amount of objectionable transfers, that was sufficient to recover. *Id*. at 623. *In re Oberdick*, 08-2155 (Bankr. W.D. Pa. July 3, 2012), is not relevant, as Appellants argue. Chief Judge Agresti was ordering more briefing from the parties, not ruling on the merits of any argument. *Id*.

The Court agrees with the reasoning in *Titus,* that it is as likely as not that the deposits attributable to Ms. Cohen were used to fund unexplained expenditures. The Court also agrees that the amount recoverable should not be reduced by the amount of unexplained deposits that are not attributable to Mr. Cohen's wages. If the Court were to reduce the amount recoverable, it would incentivize Appellants not to come forward with any information that they had regarding the source of those funds. It would allow them to avoid judgment in this action merely by having funds deposited into the account that could not be traced. Furthermore, the Court agrees with the Bankruptcy Court in *Titus* that because sufficient deposits attributable to Mr. Cohen's wages exist to fund the unexplained expenditures that those transfers were constructively fraudulent.

In sum, the Court finds that the Bankruptcy Court erred as a matter of law by requiring Appellants to produce some evidence that the funds deposited into the Entities Account attributable to Ms. Cohen were used to fund the unexplained expenditures. Therefore, upon remand, the amount of unexplained expenditures that the Trustee can recover should be reduced by the amount of deposits attributable to Ms. Cohen.

### D. Reasonably Equivalent Value

Appellants next argue that Ms. Cohen's deposits into the Entireties Account constituted reasonable equivalent value and therefore Mr. Cohen's deposits cannot be fraudulent. This is a mixed question of fact and law, and thus the Court must break it down to its component parts. Ms. Cohen routinely deposited her paychecks into the Entireties Account while she was working as a teacher, and after retirement, routinely deposited her retirement checks into the Entireties Account. In order to be fraudulent, Mr. Cohen must have "made the transfer . . . without receiving a reasonably equivalent value in exchange for the transfer . . . ." 12 Pa.C.S.

§§ 5104(a)(2), 5105.

### *1. Equivalent Value as a Matter of Law*

Appellants argue that *Stinner v. Stinner*, 446 A.2d 651 (Pa. Super. 1982) makes it "clear" that "[w]here the non-debtor spouse also contributes to the jointly-held property, the conveyance by a debtor spouse of property into an entireties estate is supported by fair consideration." Doc. No. 4, 15. This is a question of law that the Court reviews *de novo*. The Court in *Stinner* made no such holding. The sentence cited by Appellants only references one case, *United States ex rel. Marcus v. Morris*, 62 A.2d 43 (Pa. 1948). *Stinner*, 446 at 653. In *Morris*, a husband deeded a home to himself and his wife. *Morris*, 62 A.2d at 44. However, unlike the present case, the wife had contributed funds to build the house in excess of 50% of the value of the house. *Id.* at 45.

Furthermore, it is well settled that "[i]ntangible, non-economic benefits, such as preservation of marriage, do not constitute reasonably equivalent value." *Hinsley v. Boudloche (In re Hinsley)*, 201 F.3d 638, 643 (5th Cir. 2000); *Leibowitz v. Parkway Bank & Trust Co., (In re Image Worldwide, Ltd.)*, 139 F.3d 574, 577 (7th Cir. 1998); *Dietz v. St. Edward's Catholic Church (In re Bargfrede)*, 117 F.3d 1078, 1080 (8th Cir. 1997) (per curiam). Thus, Appellants' argument that Ms. Cohen's deposits into the Entireties Account were for reasonable equivalent value as a matter of law is without merit.

### *2. Equivalent Value as a Matter of Fact*

The Court then turns to whether Ms. Cohen's deposits into the Entireties Account were a reasonable equivalent value for Mr. Cohen's deposits. This is a question of fact, which this Court reviews for clear error. *See Allstate Ins. Co. v. Countrywide Fin. Corp.*, 842 F.Supp.2d

1216, 1224 (C.D. Cal. 2012); *Armstrong v. Collins*, 2010 WL 1141158, \*19 (S.D.N.Y. Mar. 24, 2010); *Wachovia Secs., LLC v. Neuhauser*, 528 F.Supp.2d 834, 859 (N.D. Ill. 2007).

Federal Courts within Pennsylvania (and other jurisdictions) that have construed the phrase "reasonable equivalent value" have held that the meaning of the phrase in UFTA is the same as the phrase in the Bankruptcy Code. *See, e.g., Feldman v. Chase Home Fin. (In re Image Masters, Inc.)*, 421 B.R. 164, 176-77 (Bankr. E.D. Pa. 2009); *Webb MTN, LLC v. Exec. Realty P'ship (In re Webb MTN, LLC),* 420 B.R. 418, 434 n.15 (Bankr. E.D. Tenn. 2009) (collecting cases). Thus, in addition to examining how Pennsylvania state courts addressed the issue, this Court can inquire into how Bankruptcy Courts and other state courts have construed the term.[8]

The United States Court of Appeals for the Third Circuit has explained that "a party receives reasonably equivalent value for what it gives up if it gets 'roughly the value it gave.'" *VFB LLC v. Campbell Soup Co.*, 482 F.3d 624, 631 (3d Cir. 2007) (quoting *Pension Transfer Corp. v. Beneficiaries Under the Third Amendment to Fruehauf Trailer Corp. Ret. Plan (In re Fruehauf Trailer Corp.)*, 444 F.3d 203, 213 (3d Cir. 2006)). "[T]he debtor need not collect a dollar-for-dollar equivalent to receive reasonably equivalent value." *Official Comm. of Unsecured Creditors v. Mellon Bank (In re R.M.L., Inc.)*, 187 B.R. 455, 465 (Bankr. M.D. Pa. 1995) (quoting *Butler Aviation Int'l v. Whyte (In re Fairchild Aircraft Corp.)*, 6 F.3d 1119, 1125-26 (5th Cir. 1993)).

The "[C]ourt must also keep in mind the equitable purposes of the UFTA because any significant disparity between the benefit received and the value transferred harms innocent creditors." *Leverage Leasing Co. v. Smith*, 143 P.3d 1164, 1167 (Colo. App. 2006) (citing

---

[8] See § IV(G)(2) *infra.*, for a detailed *Erie* doctrine discussion.

*Tomsic v. Pitocchelli* (*In re Tri-Star Techs. Co., Inc.*), 260 B.R. 319, 326 (Bankr. D. Mass. 2001)).  As the United States Court of Appeals for the Sixth Circuit has recognized:

> [T]he proper focus is on the net effect of the transfers on the debtor's estate, the funds available to the unsecured creditors. As long as the unsecured creditors are no worse off because the debtor, and consequently the estate, has received an amount reasonably equivalent to what it paid, no fraudulent transfer has occurred.

*Congrove v. McDonald's Corp. (In re Congrove)*, 222 F. App'x 450, 454 (6th Cir. 2007) (quoting *Harman v. First Am. Bank of Md. (In re Jeffrey Bigelow Design Group, Inc.)*, 956 F.2d 479, 484 (4th Cir. 1992)).

The Court finds several cases instructive.  In *In re Porter*, the debtor conveyed real property worth $88,000 to himself and his wife as tenants by the entireties.  *Hyman v. Porter (In re Porter)*, 37 B.R. 56, 59 (Bankr. E.D. Va. 1984).  This was in exchange for the wife transferring personal property valued at $2,245 to herself and her husband as tenants by the entireties.  *Id*.  The Court held that such a transfer was without reasonable equivalent value.  *Id*. In *Fitzgibbons v. Thomason* (*In re Thomason*), 202 B.R. 768 (Bankr. D. Colo 1996), the Court held that a transfer of all the proceeds from the sale of the marital home ($5,962) was not reasonable equivalent value for transfer of interest in a partnership worth $87,500.  *Id*. at  772-73.  In *In re Carbaat*, the Court held that a debtor's transfer to his ex-wife as part of their divorce was not for reasonable equivalent value because he received less than 70 cents on the dollar. *Kendall v. Carbaat (In re Carbaat)*, 357 B.R. 553, 560-61 (Bankr. N.D. Cal. 2006).  In *In re El-Atari*, the Court implied that if the debtor had only received 47 cents on the dollar in a transaction it would not be reasonable equivalent value.  *McCarthy v. 88 La Gorce, LLC (In re El-Atari)*, 2012 WL 404947, *3-4 (Bankr. E.D. Va. Feb. 8, 2012).

Mr. Cohen received value, as a percentage of that given, within the range of values discussed in these cases.  Furthermore, the equitable considerations weigh in favor of a finding

that Mr. Cohen did not receive reasonable equivalent value in return for his direct deposits into the Entireties Account. This is evidenced by Trizec's inability to collect on its judgment against Mr. Cohen.

Many couples deposit all of their paychecks into an entireties account and use those funds to pay not only for necessities, but also to pay for luxuries and those items that fall in the continuum between necessities and luxuries. This is a laudable practice in many respects. However, UFTA views this practice as a vehicle for fraudulently transferring funds from one spouse to the other. As such, fraudulent intent is not a necessary element of a fraudulent transfer. This explains how the Bankruptcy Court found for Appellants on the Trustee's actual fraudulent transfer claim but still found that the transfers were constructively fraudulent.

The value given by one spouse must be reasonably equivalent to that given by the other spouse. In this case, Mr. Cohen's deposits dwarfed those made by Ms. Cohen. Thus, the Bankruptcy Court did not err in finding that the transfers were without reasonable equivalent value.

**E. Discharge of Debt**

Appellants next argue that Mr. Cohen's debts were discharged in the underlying bankruptcy proceedings and therefore there was no debt and no claim for fraudulent transfer. Appellants rely upon 11 U.S.C. Section 523(c) and *Dalembert v. Pendergrass* (*In re Pendergrass)*, 376 B.R. 473 (E.D. Pa. 2007) in support of their argument. The Trustee relies upon 11 U.S.C. § 550(a)(1), *Butler v. Becton, Dickinson and Co. (In re Loomer)*, 198 B.R. 755, 758 (Bankr. D. Neb. 1996) and *In re Moss*, 2004 U.S. Bankr. LEXIS 1190 (Bankr. N.D. Tex. Aug. 12, 2004) in support of his argument that recovery is permitted.

The Court finds the parties' respective reliance on *Pendergrass* and *Loomer* to be unpersuasive.  In *Pendergrass*, the Complaint was filed pursuant to 11 U.S.C. § 523(a)(2). *Pendergrass*, 376 B.R. at 475.  The Trustee filed the Second Amended Complaint at issue in this case pursuant to 11 U.S.C. § 550 and UFTA.  Thus, the language of Rule 4007(a) applicable in *Pendergrass* is not necessarily applicable in the case at bar.  *Loomer* concerned recovery of transfers into an ERISA plan and does not discuss the interaction of 11 U.S.C. § 523 with § 550 and/or UFTA.  *Loomer*, 198 B.R. at 758.

The Court does find *Moss* to be persuasive.  In *Moss*, Debtor was entitled to discharge her debts after the Bankruptcy Court dismissed the trustee's adversary proceeding objecting to the discharge.  *Moss,* 2004 U.S. Bankr. LEXIS 1190 at *2.  Thereafter, a fraudulent transfer action was brought pursuant to 11 U.S.C. § 544.  *Id.*  Debtor claimed that because the transfer occurred pre-petition, the claim was discharged in bankruptcy.  *Id*. at *3.  The Court held that:

> A trustee may avoid a transfer by the debtor under 11 U.S.C. § 544(b). The discharge of the debtor has no impact on an avoided transfer. After a transfer has been avoided, the trustee may recover, for the benefit of the bankruptcy estate, the property transferred, or, if the court so orders, the value of the property, from transferees. 11 U.S.C. § 550(a). The discharge of the debtor has no impact on a judgment entered under § 550(a).

*Id*. at *4.  The discussion in *Moss* shows that if a judgment is unambiguous, and all of the elements of a fraudulent transfer claim are satisfied, the transfer can be avoided.  *Id*. at *5.

The Court also finds instructive *Silverman v. Sound Around, Inc.* (*In re Allou Distribs. Inc.)*, 392 B.R. 24 (Bankr. E.D.N.Y. 2008).

> [I]n order to satisfy the standing requirements of Section 544, the same creditor that has an allowed unsecured claim on the Petition Date must also have been a creditor of the transferor on the Transfer Date . . . .  [However,] a triggering creditor must be the same creditor on both the Transfer Date and the Petition Date, but need not hold the same claim at these two essential points in time. . . .  It is surely true that where a creditor holds a claim that is satisfied in full, the creditor no longer has a cause of action to recover assets conveyed by the debtor

> to a transferee. . . . Accordingly, the plaintiff is no longer a creditor aggrieved by the alleged fraudulent conveyance. But the payment of the claim does not somehow retroactively alter the creditor's status as a creditor at the time of the transfer.

*Id* at 34 (emphasis removed) (internal quotation marks and citations omitted). Thus, the Bankruptcy Court for the Eastern District of New York held that even if a creditor was fully paid off it could still be the triggering creditor for the Trustee to pursue a claim under Section 544(b). *Id*. at 35.

Thus, it is not necessary for the creditor to be able to recover on a debt in order for the Trustee to be able to recover on a Complaint for fraudulent transfer. Instead, all that is required is that the same creditor hold a claim at the time of the alleged fraudulent transfer and at the time the Complaint was filed. Trizec held claims at both times, albeit different claims, and therefore the Trustee was entitled to bring this action. Accordingly, the Bankruptcy Court correctly rejected Appellants' argument regarding discharge of the underlying debt.

### F. Insolvency

Appellants fifth argument is that the Trustee failed to prove that Mr. Cohen was insolent. This is a mixed question of fact and law which must be broken down into its component parts. As a matter of law, Appellants argue that the jury verdict against Mr. Cohen could not make him insolvent because the verdict was subject to a bona fide dispute. However, this is not the law under UFTA. The language of the statute is unambiguous that the jury verdict can be considered when determining if a debtor is insolvent under UFTA. UFTA defines liability as "[l]iability on a claim" and defines claim as "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." 12 Pa.C.S. § 5101(b). A transfer is fraudulent if the debtor did not receive reasonable equivalent value and "believed or reasonably should have

believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due." 12 Pa.C.S. § 5104(a)(2)(ii).

The plain language of the statute is unambiguous. Trizec had a claim against Cohen for the amount of the jury verdict. Thus, the amount of the jury verdict was a liability of Mr. Cohen. Mr. Cohen believed, or at the very minimum reasonably should have believed, that he would incur debts beyond his ability to pay them as they became due. Mr. Cohen was aware that he would not be able to satisfy the judgment in favor of Trizec if and when that debt became payable after the exhaustion of appeals. Thus, under the plain language of the statute Mr. Cohen was insolvent.

Furthermore, the United States Court of Appeals for the Third Circuit has noted that "the Pennsylvania Supreme Court has found that awareness of a probable legal action against a debtor amounts to a debt for purposes of determining solvency." *United States v. Green*, 201 F.3d 251, 257 (3d Cir. 2000) (citing *Baker v. Geist*, 321 A.2d 634, 637-38 (Pa. 1974)); *see Titus*, 467 B.R. at 626; *Arbogast I*, 466 B.R. at 321; *Norfolk & Western R. Co. v. Wasserstrom*, 1991 WL 183385, *2 (E.D. Pa. Sept. 11, 1991). When a jury verdict has been entered, the probability that a creditor may collect is much higher than when a debtor is merely aware that a lawsuit is possible or after filing of the lawsuit and before entry of a jury verdict. Accordingly, the Bankruptcy Court did not err in finding that Mr. Cohen was insolvent.

### G. Deference to Judge Wettick

Appellants next argue that the Bankruptcy Court should have followed the decision of Court of Common Pleas of Allegheny County Judge Wettick in *Trizechahn Gateway,*

*LLC v. Paul H. Titus et ux.* Appellants' argument is not based on judicial estoppel or claim preclusion, but rather that because UFTA is a state statute, the interpretation of a state court is controlling. As this is a question of law, this Court's review is *de novo*.

### 1. Erie Doctrine

Appellants misstate the well settled *Erie* doctrine, which is codified at 28 U.S.C. § 1652 ("The laws of the several states . . . shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply"). "A federal court under *Erie* is bound to follow state law as announced by the highest state court." *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 253 (3d Cir. 2010) (quoting *Edwards v. HOVENSA, LLC*, 497 F.3d 355, 361 (3d Cir. 2007)).

Under the *Erie* Doctrine, "to the extent 'the state's highest court has not addressed the precise question presented, [the Court] must predict how [that] court would resolve the issue.'"[9] *Allstate Prop. & Cas. Ins. Co. v. Squires*, 667 F.3d 388, 391 (3d Cir. 2012) (second alteration in original) (quoting *Wayne Moving & Storage of N.J., Inc. v. Sch. Dist. of Phila.*, 625 F.3d 148, 154 (3d Cir. 2010)). In making this prediction:

> [The Court] must look to decisions of state intermediate appellate courts, of federal courts interpreting that state's law, and of other state supreme courts that have addressed the issue, as well as to analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand.

*Id.* (quoting *Meyer v. CUNA Mut. Ins. Soc'y*, 648 F.3d 154, 164 (3d Cir. 2011)).

---

[9] "When [a Court of Appeals predicts how a state Supreme Court will rule], the district courts in this Circuit are to apply its predictive holding to legal questions arising under that particular state law unless the state supreme court issues a contrary decision." *Konold v. Superior Int'l Indus. Inc.*, --- F.Supp.2d ---, 2012 WL 5381700, *10 (W.D. Pa. Oct. 31, 2012) (Schwab, J.) (alteration in original) (quoting *Lynn el rel Lynn v. Yamaha Golf-Car Co.*, ---F.Supp.2d ---, 2012 WL 3544774, *10 (W.D. Pa. Aug. 16, 2012) (Hornak, J.)). However, in this case the United States Court of Appeals for the Third Circuit has not predicted how the Pennsylvania Supreme Court would rule.

The United States Court of Appeals for the Third Circuit has rejected Appellants'

argument regarding deference. In *Consumer Party v. Davis*, the Court held that "[Federal

Courts] are not bound by a state trial court's interpretation of a state statute." 778 F.2d 140, 148

n.14 (3d Cir. 1985); *see also Johnson v. Riddle*, 305 F.3d 1107, 1118 (10th Cir. 2002) (holding

that a District Court was wrong to believe that it was bound by state trial court's interpretation of

a state statute). In other Judicial Circuits, state trial court decisions are given significant weight.

*See Wells v. Liddy*, 186 F.3d 505, 528 (4th Cir. 1999). However, in this Judicial Circuit, such

decisions are only "analogous decisions." Thus, the Bankruptcy Court was correct to conduct a

full *Erie* analysis instead of automatically adopting Judge Wettick's decision.

## 2. Predicting Pennsylvania Supreme Court

The Bankruptcy Court predicted that the Pennsylvania Supreme Court would hold that

"an insolvent debtor's deposits of his or her own funds into an entireties account are not

fraudulent as to said debtor's creditors to the extent that said funds are then used to satisfy

reasonable and necessary expenses for the maintenance of said debtor's family." *Adversary

Proceeding*, 2012 WL 5360956 at *7 (quoting *Reitmeyer v. Meinen (In re Meinen)*, 232 B.R.

827, 842 (Bankr. W.D. Pa. 1999)). *Meinen* relied upon two state trial court decisions, *Watters v.

DeMilio*, 16 Pa. D.& C.2d 747 (Ct. Common Pleas 1957) and *Welker v. Strohmeyer*, 45 Berks 21

(1952), in crafting the rule. Although the Pennsylvania Superior Court had a chance to decide if

*Watters* and *Welker* were correctly decided, it declined to do so. *See Stinner*, 446 A.2d at 653

n*.

Federal Courts have followed the rule articulated in *Meinen*. The Bankruptcy Court of

this District has thrice followed the *Meinen* rule. Judge McVerry affirmed the Bankruptcy

Court's use of the standard in *Arbogast I. Arbogast II*, 479 B.R. at 668. The Bankruptcy Court

likewise adopted the *Meinen* rule in *Titus*, 467 B.R. at 607 and in the case at bar. The Bankruptcy Court for the Eastern District of Pennsylvania quoted the *Meinen* standard in *dicta*. *Krasny v. Nam* (*In re Nam*), 257 B.R. 749, 762 n.15 (Bankr. E.D. Pa. 2000).

Judge Wettick, conversely, held that "the direct deposits of the Debtor's individual compensation into the Entireties Checking Account will only constitute fraudulent transfers to the extent that they were spent on luxuries." *Titus*, 467 B.R. at 607. Furthermore, Judge Wettick also held that a spouse "cannot be deemed to have been a transferee of such deposits from which a recovery can be had unless (a) she is the one who actually spent such deposits, and (b) that which was purchased with such deposits actually benefitted her." *Id*. at 608. Judge Wettick did not rely on any cases in support of this rule.

The Court respectfully finds that the *Meinen* rule should apply in this case. Judge Wettick's reasoning created a dichotomy between necessities and luxuries. *Id*. However, there are certainly items that while not necessities, are not luxuries. *See id*. (citing *Fifth Third Bank v. Alexo* (*In re Alexo*), 436 B.R. 44, 49 (Bankr. N.D. Ohio 2010); *Shah v. Shaw* (*In re Shaw*), 294 B.R. 652, 655 (Bankr. W.D. Pa. 2003); *Montgomery Ward & Co., Inc. v. Blackburn* (*In re Blackburn*), 68 B.R. 870, 874 (Bankr. N.D. Ind. 1987)); *see also Vargas v. Educ. Credit Mgmt. Corp. (In re Vargas)*, 2010 WL 148632, *3 (Bankr. C.D. Ill. Jan. 12, 2010). The *Meinen* Court recognized that funds spent on items that are in the "gray area" between luxuries and necessities could constitute a fraudulent transfer. The most illustrative example of the distinction can be seen in *Vargas*, where the Court held that a monthly allotment for lottery tickets was not a luxury. *Vargas*, 2010 WL 148632 at *3. However, lottery tickets are also not necessities. A debtor should not be able to avoid a judgment by transferring funds into an entireties account to be spent on lottery tickets. The *Meinen* rule recognizes this reality.

The Court also disagrees with Judge Wettick's holding that in order for the funds to have been fraudulently transferred to Ms. Cohen, she need to have actually spent such deposits for her own benefit. The Pennsylvania Supreme Court has not addressed the issue since the 1976 passage of the Multiple-Party Accounts Act ("MPAA"), 20 Pa.C.S. § 6301, *et seq*. Section 6303(a) provides that "[a] joint account belongs, during the lifetime of all parties, to the parties in proportion to the net contributions by each to the sum on deposit, unless there is clear and convincing evidence of a different intent."

The Pennsylvania Superior Court has held that the Pennsylvania Supreme Court's decisions prior to passage of MPAA remains good law. "An intention to create the entirety is assumed from the deposit of an asset in both the names of a husband and wife, without more, and from the fact of a marital relationship." *Constitution Bank v. Olson*, 620 A.2d 1146, 1149 (Pa. Super. 1993) (citing *Shapiro v. Shapiro*, 224 A.2d 164, 172 (Pa. 1966)); *In re Estate of Cambest*, 756 A.2d 45, 53 (Pa. Super. 2000). Federal Courts that have considered the issue have held likewise. *Titus*, 467 B.R. at 609-10; *Nam*, 257 B.R. at 761-62.

The Court finds the reasoning of the Superior Court and Bankruptcy Courts within this Judicial Circuit to be compelling. The Pennsylvania Supreme Court ruled, several times in the decade prior to passage of MPAA, that funds deposited into a joint bank account by a husband constituted a transfer. *In re Carnevalino's Estate*, 257 A.2d 546, 547 (Pa. 1969); *Shapiro*, 224 A.2d at 172*; In re Holmes' Estate*, 200 A.2d 745, 747 (Pa. 1964). There is no evidence to suggest that the Pennsylvania General Assembly intended to change that with passage of the MPAA. Accordingly, the Court finds that the Bankruptcy Court's prediction that the Pennsylvania Supreme Court would follow the *Meinen* rule, was correct as a matter of law.

### H. Transfer of Funds

Finally, Appellants argue that the direct deposit of Mr. Cohen's checks into the Entireties Account does not constitute a transfer of an asset under UFTA. As this is a question of law, this Court's review is *de novo*. The Bankruptcy Court relied upon *Meinen* in holding that "deposit[s] of a judgment debtor's own funds into an account owned by the entries is a transfer under the UFTA."[10] *Adversary Proceeding*, 2012 WL 5360956 at *5 (citing *Meinen*, 232 B.R. at 840). The Bankruptcy Court also found persuasive the reasoning of the Bankruptcy Courts in the related cases of *Arbogast I*, 466 B.R. at 311 and *Titus*, 467 B.R. at 617, which both held that such a deposit is a transfer of an asset under UFTA.

This Court rejects Appellants' statutory interpretation argument. The direct deposit of funds constituted a transfer under UFTA. Appellants' argument that a direct deposit is somehow different from a paycheck places form over substance. The substance of the transaction is clear; Mr. Cohen received the paycheck and then placed it into the Entireties Account. The result would be the same under the formulaic approach advanced by Appellants. Mr. Cohen had to authorize his firm to directly deposit the checks into the Entireties Account. Thus, when the law firm initiated the wire transfer into the Entireties Account, Mr. Cohen had constructive possession of the funds, albeit for milliseconds.

---

[10] The Bankruptcy Court held that:
> Such an approach recasts the indirect transfer as two discrete transfers: (1) Cohen & Grigsby transferred control of the wages to the Debtor, and (2) the Debtor then transferred his wages into the Entireties Account. Once the paychecks came into the Debtor's physical possession, custody, or control, they lost their exempt status. As such, they constituted an asset that the Debtor indirectly transferred within the meaning of § 5101(b). Cohen & Grigsby's direct deposits of [Mr. Cohen's] compensation into the Entireties Account, therefore, constituted transfers [Mr. Cohen] made himself for purposes of §§ 5104(a) and 5105, despite that the Debtor made the transfers indirectly.

*Adversary Proceeding*, 2012 WL 5360956 at *6.

The Court notes that UFTA has been adopted by 45 jurisdictions,[11] yet Appellants do not cite any cases that have held that a direct deposit into a checking account is not a transfer under UFTA. As direct deposits have become mandatory for many, if not most, employees, the lack of a single decision, by any state or federal court, that direct deposits are somehow exempt from the general principles of UFTA is significant. For these reasons, the Court finds that Mr. Cohen transferred funds into the Entireties Account when he received them via direct deposits.

## V. Conclusion

This Court will affirm the Bankruptcy Court in all of its holdings except for the amount of the unexplained expenditures that can be recovered (see Section IV(C)(3), *supra*). The Trustee failed to satisfy his burden that Mr. Cohen's funds alone were used to pay the unexplained expenditures. Accordingly, the October 31, 2012, Order of the Bankruptcy Court will be AFFFIRMED IN PART, VACATED IN PART, and REMANDED for further proceedings consistent with this Opinion.

An appropriate Order follows.

s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc: All ECF Counsel of Record

---

[11] Alaska, Kentucky, Virginia, Louisiana, South Carolina, Maryland, New York, and Puerto Rico have not adopted UFTA. The Virgin Islands, District of Columbia, and the 43 other states have adopted UFTA. See http://www.uniformlaws.org/Act.aspx?title=Fraudulent%20Transfer%20Act (last visited Feb. 27, 2013). Of those 45 jurisdictions 42, including Pennsylvania, have the same definition of transfer. The three exceptions are Michigan, Indiana, and Delaware. See Westlaw annotations to Unif. Fraudulent Transfer Act § 1 (last visited Feb. 27, 2013).